Reese, J.
delivered the opinion of the court.
The complainant was the endorser of a promissory note made by Jenkins, and payable at the Bank, upon which he has been Sued by the Bank, and a judgment has been recovered against him; and be files this bill, alledging that the Bank is indebted to Jenkins on the ground of money received and retained by the Bank from Jenkins, in a series of transactions with him, to an amount much exceeding that of the note of complainant, upon which the Bank has obtained judgment; and the bill prays an account of such usurious transactions, and of the amount equitably due thereon from the Bank to said Jenkins, to the end, that the same may be applied to the satisfaction and extin-guishment of said judgment. The facts out of which the allegation of usury is attempted to be established, are, as it appears from the answer of the Bank and the proof in the case, as follows:
Jenkins ■was for a number of years a Contractor with the General Post Office, for carrying the mails of the United States in stage coaches, and in that business was in the habit of receiving from time to time, a considerable amount of eastern *408 funds, in the shape of post office checks, and otherwise, and of gold and silver; and during the same time, he needed still larger amounts, than these receipts, of money current within the State, to meet his engagements. In this state of things, he made an arrangement with the Bank, by which it was agreed, and understood between them, that for whatever sums of gold and silver or eastern funds he would from time to time deposit with the Bank, he might immediately check for and receive in the notes of the Bank or of other Tennessee banks, and in addition, he should have the privilege of borrowing from the Bank, in their own notes or in the notes of other Tennessee banks, the like amount, upon giving his note with satisfactory endorsers, like other customers.
By this arrangement he had the power to receive in Tennessee money twice the amount of his funds; and the Bank had thte power, without rashness, to enlarge the line of its discounts, because it was not probable, that more than one-half of the notes issued by them, would in any short time return to their counters, to be taken up by them. In this way, at various times the Bank received from Jenkins in post office checks $5,383 94, in United States bank paper $100, and in silver $4,368 98, making in all $9,852 92: $1,443 92 of this aggregate was applied to discounts upon renewal of other notes that Jenkins had in bank, and the balance was disposed of as above. During the time of these transactions, the difference between specie and eastern funds, and Tennessee bank notes was 7 or 8 per cent, or more on an average. Out of these transactions Jenkins became indebted to the Bank to the amount of $2,600, and is largely indebted to the Bank on other accounts. Upon this state of the facts, there are two most obvious grounds, upon which the prayer of the plaintiff, for relief, must be refused.
• These are, first — that there does not appear to be any usury in the case; and, secondly, If there were, the Bank in point of fact, is not indebted to Jenkins upon that or upon any other ground; but on the contrary, Jenkins is largely indebted to the Bank. 1st. There is no usury in the case. Usury is an illegal and corrupt agreement, whereby more than six per cent, is *409 taken or received for the loan of money, or the forbearance of debt.
The money loaned by the Bank to Jenkins was on the same terms, as to others. He received the Tennessee bank notes, and he gave his notes with endorsers to secure the repayment, and in these securities no illegal interest was taken or received. He borrowed, and he paid precisely as did others. In what did the usury consist? It is said, because he deposited specie and eastern funds, and checked for the nominal amount in Tennessee notes, when he would have been entitled to a premium. That was his own affair. The notes received for his checks, were notes of specie paying banks, as sound or available, perhaps, to him and to others, in ordinary transactions, as eastern funds. He chose to let them have his funds on such terms, to enable them consistently with prudence and policy, and maintenance of their credit, to extend to him larger discounts, and, perhaps, upon slender security, than, according to their usual course of business, they would have extended to others. Such arrangements are hazardous to banks, and they are apt in the end, as in this case, to lose by them. But it is clear that it was not the intention of either of these parties, by any shift or device, to cover up and conceal usury. If so, it would be usury to exchange Tennessee bank notes at par for eastern funds, or to receive, upon securities given for their notes, such funds at par.
. This case bears no resemblance to the case of Lanier vs. The Nashville Bank, and that case, among the class to which it belongs, goes farther than the case that goes farthest. That case, however, is correctly decided, if the object and purpose of the parties were to cover over an usurious transaction, with the forms and appearances of a sale of the notes; otherwise not.
In the elaborate opinion of the Supreme Court of the United States, in the case of The Bank of the United States vs. Waggoner et als. 9th Peters, 378, Mr. Justice Story, who delivered the opinion of the court, maintains, on. the subject of usury, the following principles: That in construing the usury laws, the uniform construction in England has been, and it is equally applicable here, that to constitute usury within the prohibition of the *410 law, there must be an intention, knowingly, to contract for, and to take usurious interest, for if neither party intend it, and act bona fide and innocently, the law will not infer a corrupt agreement. Again, he says, speaking of that case, there has been no taking of usury, and no reservation of usury on the face of the transaction. The case then resolves itself into this enquiry, whether upon the evidence, there was any such corrupt agreement, or device, or shift, to reserve or take usury, and none of these appear in the case. Again, in that case, it is held, because an article is depreciated in market, it does not follow that the owner is not entitled to demand or require a higher price for it before he consents to part with it. He may possess bank notes, which to him are of par value in payment of his own debts, or in payment of public taxes, and yet their marketable value may be far less. If he uses no disguise; if he seeks not to cover a loan of money, under the pretence of the sale or exchange of them, but the transaction is bona fide, what it purports tobe, the law will not set aside the contract, for it is no violation of any public policy against usury. See also on this subject, 10 Mass-R. 284, and 19 John. R. 496. It seems to us, that these general views and principles are applicable to this case, in which there is neither usury upon the face of the transaction, nor any evidence that the parties did not act bona fide, and without any purpose, by shift or device, to cover over an usurious transaction.
2d. But in the second place, if there had been usury in the transaction, the evidence is abundant to establish, that Jenkins in those very transactions, is largely indebted to the Bank, as well as on other transactions, and there is no principle of law or of equity which will countenance for a moment, under such circumstances, the relief in the bill prayed for. This is too plain to’admit of argument or illustration.
Upon both grounds, therefore, we must reverse the decree of the Chancellor, dissolve the injunction, and dismiss the bill with costs in this court and in the Chancery Court.